05-1475, Mr. Zeltsman Good afternoon, may it please the court? This case presents, or the central issue in this case, is whether a party can meet its burden of proving obviousness by clear and convincing evidence without actually presenting its theory of obviousness to trial. Now in this case, instead of actually presenting evidence of obviousness But the jury found obviousness Correct And the judge, JMOL, affirmed Correct We have layers here indicating that there were facts that could lead to a conclusion of obviousness There were facts with respect to the issue of anticipation because there was discussion, there was some discussion about certain prior references Well, the court held that a number of the basic facts plus grounds of admission added up to obviousness Correct Why is that not properly before us, is what you say Because a party that has the burden of proving a patent and valid has an obligation to treat obviousness as a separate and distinct challenge to validity from anticipation And it has specific elements and there are ground factors that need to be analyzed And when presenting this to a jury, I don't think it's too much to ask that a party present its case to the jury, instruct, give guidance to the jury as to how it's to arrive at the obviousness decision Which is not, which is more than simply describing certain of the Were there jury instructions in obviousness? There was a jury instruction in obviousness But I think in Lear-Siegler, this case Well, there was also extensive testimony, wasn't there, that the claim limitations with the exception of the predetermined limitation were satisfied in the prior art, right? There was more evidence with respect to the references that we're discussing now Yeah, there was plenty of evidence to support a jury determination that all the claim limitations were satisfied in the prior art with the exception of this one limitation and that is the predetermined limitation, right? I don't believe that's the case No? No There were elements that were missing from that discussion Well, let's talk about the independent claims Correct Okay, so reframe my question, so with respect to independent claims 1 and 21, those are the independent claims, right? There was plenty of testimony to enable a jury to conclude that those limitations appeared in the prior art with the exception of the predetermined limitation I believe that there were elements that were missing What elements were missing? There was no discussion of a mold layer defining cavity section in the discussion The discussion was much more general in describing, which was a key element of the invention, the fact that you could have thicker and thinner sections in the mold cavity, which forms part of the definition of what a flow channel is Did you argue this in your brief? I didn't see that you argued that there was any limitation missing from the prior art other than the predetermined limitation No, we raised that in our opening brief Can you show me where? The discussion, I believe, starts on page 46 of our opening brief And then we walk through, we initially, on page 47, you will see we take the claims, starting with the first independent claim, and identify the various limitations In the first independent claim, there are 26 limitations And beginning on page 49, we begin to apply the fact that if you even look at the substantive discussion, which was general in nature, certainly there was more of it than with respect to the prior art reference that was at issue in the first appeal You will see at the full paragraph on page 49, at the bottom, it says limitations number 3-7, 9, 10, 12, 13, 15-17, 21, 22, 25, and I think the other are from the dependent claims, are still missing 26 limitations, not exactly pioneering invention, crowded out I'm sorry? Apparently crowded out Well, yeah, and we obviously didn't prevail in the infringement part of the case But the same limitations that we had to meet in our infringement case must be met precisely on the validity side for the case, for the claim to be held invalid And that burden of proof is on COITO Okay, well let's assume for the moment that it's the only claim limitation missing from the prior art, the predetermined limitation Okay Okay, let's just hypothesize, I know you disagree with that Okay But why couldn't the jury reach a conclusion of obviousness without the benefit of expert testimony about that particular limitation? We're not talking about something really complicated here, right? Well, first of all, it is complicated, but second of all, I don't think, and I think this Court even mentioned that this technology was complicated in the first decision Well, the technology is complicated, but the predetermined limitation is not complicated It's just a question of whether they intended to strengthen the plastic part by laminating it, right? That's basically what we're talking about Right, I think there's a more fundamental problem in that the obviousness case was never presented to the jury And I think that's, the Lear-Siegler case is even, I think, a better analogy Yeah, but stick with my question for a moment So why couldn't the jury, if that's the missing element, why couldn't the jury make a determination that someone skilled in the art would know enough to add the predetermined limitation to the prior art, which would render the thing obvious? Number one, nobody told the jury that was the missing element from the other pieces of art about which there was more discussion And number two, nobody pointed to anywhere in this extensive record where they should look to find that one missing limitation, if indeed that was what was missing in the jury's mind So you agree they didn't need expert testimony on that limitation? They don't need expert testimony This linking evidence could be done in closing argument, it could be done in a claim chart, it could be any sort of presentation of evidence that will give the jury guidance as to how it is to reach a decision of obviousness, applying the law of obviousness How specific does the charge have to be with respect to obviousness? Do they have to be shown that you add A, B, and C and you come up with D? Or is it just showing that A, B, and C are present? I think that if somebody is going to be combining references, they need to identify that to the jury, saying that to reach your decision, if some elements A, B, and C are found in this reference, D is found in that reference, and that you're to combine the two, and the motivation to combine the two is found somewhere else in the record I think those legal elements must be met Can the jury then decide that it's not A, B, and C, but D, E, and F, which are part of the record, and combining those? Are they free to do that if it's in the record? If it's in the record, I think the jury is free to do it, because I think the party presenting the evidence has met its burden of proof That's, I think, the problem here, is we haven't met the first threshold You're saying it's not in the record? It's not in the record Well, it was not specified in the record There is no theory laid out in the record at all Does it have to be a theory that has to be laid out, or is it just evidence which is in the record which is presented to the jury? Well, I think according to Lear-Siegler, you need some linking Lear-Siegler was an infringement, a doctrine of equivalence kind of issue Correct. And in the first Covito case, the court applied the Lear-Siegler concept to the context of anticipation and obviousness But I think that footnote, though, really goes to the issue as to whether the evidence was in the record, not whether there was a linking requirement But is it in the record? Is the evidence in the record that can be developed by the jury itself without having to be led to the evidence? I still think that the analogy to Lear-Siegler is really profound here in the sense that there's a burden of proof And a party is going to trial to present an issue to invalidate a patent And going to trial, you would think that it's not too much to ask to figure out what evidence you will rely on, how you will combine it, where the motivation is And that you will present that to a jury And it's not the obligation of a jury to sift through this volume of record and figure out which parts fit in where And where the motivation to combine is In fact, it's a higher burden of clear and convincing evidence on validity than it is the preponderance of the evidence for infringement And this court has said that it is not the obligation of the trial judge to sift through the evidence to figure out the possible validity analysis I think it's a shifting of the burden to merely take and present evidence of anticipation And merely argue in the alternative in closing that if you don't find anticipation, somewhere in here is obviousness Whatever is missing, as long as it's obvious to people of skill in the art, you can do it But not give the jury any guidance, any tools to reach that decision I don't think that meets the higher burden Even if the evidence is in the record? Even if the evidence is in the record You have to select the process by which the jury then determines how to combine the references or combine the prior art or whatever is available to it I assume that if somebody is going to bring that to a trial, they have at least figured out what theory they have for obviousness What pieces of art need to be combined or what pieces of art need to be modified I believe it is their duty and obligation to at least provide some sort of guidance to the jury as to how they can reach it If a jury follows a different path, that's out of our control But at least they've met their burden of teaching the jury and giving them some road map If we were to reject that argument about the need for linking arguments Do you agree that there was sufficient evidence in record here for the jury to find that the predetermined limitation was obvious? No Why not? Because the statements that are relied on by the court, the trial court Are two statements by Paul Brown that don't mention the predetermined general limitation They don't mention combining it with any of the other art They don't mention taillights or methods of making taillights They don't mention audio cassette housings or making of audio cassette housings And frankly the predetermined direction limitation has other language in it He does mention slow channels, redirecting flow Correct So isn't that reasonably combinable with references that deal with the need to do that? There is no evidence at all that the reference, the other references The automobile taillight lenses or the audio cassettes had a need for redirecting flow Of desirability Well there's always, the only desirability that's there comes from this concept This very general concept that cross elimination improves strength But all plastic products could benefit from improved strength And there was nothing in the record that said that flow channels were known to improve strength That's not what they were used for before the 268 patent But you did say there were two overlapping layers that flow in different directions It was known before the patent Correct, the concept of cross elimination was also known, absolutely And the redirect flow was also known Correct What we have is a situation here in which the prior art did have cross laminated taillights And it was generally known that cross lamination improves strength, right? Correct But nobody knew that flow channels would improve strength Or that flow channels could be used for cross elimination And I think, without applying hindsight, we have to show, we have to find some connection, some motivation In fact, we're using flow channels to cross laminate in the prior art The requirement of the predetermined general direction Is it true that they were using flow channels to cross laminate in the prior art? I mean, there was testimony of that effect? There was no testimony that they met the predetermined general direction No, no, I understand that But there was testimony that flow channels were used to create cross laminated taillights, right? Not in the prior art, but in the accused devices, yes Well, I thought in the prior art also In the earlier Camry and Nissan Dr. Kazma was never asserting that flow channels were used to redirect flow He was saying that there were flow channels there And the position that Carrillo took was the knowledge, the predetermined general direction He testified that flow channels were used to create, in fact, we needed cross laminated taillights Plastic taillights in the prior art, right? Yes Mr. Billiton, I'm going to interrupt the flow of your argument to let you say your rebuttal comments Oh, what's that? Mr. Creston Good afternoon, your honors May it please the court Since we left off on obviousness, let me start there That's where we began, too That's where we began, you're right Turkeys attack letters on an allegation that there was no explanatory or linking evidence And they rely heavily on what they call the law of the case But what they don't recognize is that Cuito I dealt exclusively with one reference, JP-082 It was a Japanese reference that was introduced into evidence, but there was no substantive testimony at all As this court realized in Cuito I and pointed out Yeah, but you've got sort of a thin case here on obviousness Maybe it's good enough, but it's pretty thin And you'd think that if you were making an obviousness case, you'd have somebody come in and testify about the missing element The suggestion that combined all that, you didn't do that It's a little off, isn't it? I respectfully disagree, your honor You think that's the way you usually try cases? Well, I don't know about how you usually try cases But in this case, the evidence was that nearly every feature in the claim was present in the prior art That Dr. Kazner testified about The only possible exception being predetermined, that limitation And that limitation was admitted on cross-examination by Mr. Brown, Turkeys' president So I don't think it was a great... Well, not exclusively, Brian Well, he made two admissions The first one, I think, dealt with predetermined He didn't mention predetermined, did he? No, he said it was known to use flow channels to redirect flow And what that means, and what the jury could have understood that to mean, reasonably so Was that you redirect flow in a different direction that's known I mean, after all, why would you redirect flow and have no idea where the flow is going? It doesn't make sense And that was his first statement on cross-examination The second one had to do with the motivation to combine He said that it was known to have flows crossed to strengthen the part That was the motivation for using a known flow direction in the prior art lenses and cassettes I think one issue is that, in our view, both the jury and the trial court were in the best position here To gauge the impact of this testimony, both by Dr. Casmer and by Mr. Brown The trial court clearly felt there were multiple bases upon which the jury could have rendered their verdict of invalidity And the question is, the issue here is, why didn't we explain these theories to the jury? I think you asked that, Judge Dyke And as I explained, there was substantial evidence that all limitations were present In the prior art cassettes and the lenses, except possibly for that predetermined limitation But is it right to leave the jury to its own devices to determine what's in and what's out in prior art? Even though it's in the evidence? Well, you know They can pick and choose whatever they want? Yeah, I think in this case, the admissions by Brown Brown was not an obscure witness Brown was Turnkey's president He was the president of Turnkey Right, and so So what? Well He was considered to be a person of ordinary film yard, according to the court That's right Now, what happens in a situation where the jury is not directed at all to any evidence Even though the evidence is in the record at this time? Well, I think in this case, it was The combination would be apparent to the jury I think they, I mean, they found invalidity We don't know the basis because it was a general verdict We don't know exactly why they came to the conclusion they did it But clearly they felt it was obvious It might be a different situation if you have multiple references that you have to combine Here it was almost everything except for one limitation was present And I think in this case, I think it was possible for the jury to reach this conclusion We don't know though We don't know, you're right And that's because Turnkey, we had asked for a special verdict More detailed verdict Turnkey insisted that it be a general verdict But you could have presented to the jury all of the evidence and linked it pretty well though, couldn't you? I suppose it's possible to say that But the other thing to realize is that as D.J. plaintiff, we went first Brown's admission came, in Turnkey's case, they went second I suppose maybe in closing argument we could have said something about it But we certainly didn't plan ahead for Brown's admissions We didn't know that they were coming Well, you know what this looks like It looks as though you were trying to take somewhat conflicting positions on invalidity and infringement And it looks as though you didn't want a witness to get up there and testify that this was obvious Because the cross-examination of them would give you a problem on the infringement issue Because if the prior art was obvious to include the predetermined limitation The jury might well have concluded that that limitation was present in the accused of ISIS That's the problem Well, Dr. Kazim testified that when he went through each piece of prior art He said, as for predetermined, he says, at least as Turnkey was applying the claims And that's why I think the jury could have found that, well, it's not really there We don't believe it's there in the accused lenses We don't believe it's there in the prior art You had witnesses come in and testify, did you not, that with respect to the accused lenses That, you know, nobody thought of cross-lamination as increasing strength That's true, Your Honor Yeah, well That's true And, in fact, we did not predetermine that's what the testimony was And, as I said, Dr. Kazim testified that, you know, that's As Turnkey was applying that term, it would be there But, you know, the jury could have certainly found that it was not there in the prior art You can understand why I think you're trying to have it both ways, right? No I don't think I think in this case the bottom line is, was the verdict of invalidity supported? Was there substantial evidence? And I think there was On the issue of predetermined Mr. Brown's admissions, there were two, as I mentioned And in Turnkey's brief, they tried to argue that somehow these admissions need to be combined And I think we've made it clear that we don't believe they do The first one is, the first statement by Mr. Brown was the admission as to the predetermined feature The second one was the admission as to motivation One other comment, as Judge Dyke pointed out The prior art lenses and cassettes actually already taught flow channels that result in crossing flows And Dr. Kazim pointed that out in his direct testimony He showed detailed flow analyses that he did using a technique that was available to people of ordinary skill at the time And what Brown added was simply the idea that the flow channels were put there on purpose To change the direction of flow and the motivation for doing that And I think Turnkey concocts this argument that redirecting doesn't necessarily mean you know the resulting direction But there's no testimony about that at trial And at this point, all reasonable inferences should be drawn in Cuito's favor on that issue Another topic was the motivation to combine that Turnkey raises I think there, Brown's admissions were clearly made in the context of injection molded plastic It wasn't all plastic products His testimony was specific to injection molded products That's all the case was about, that's all we were talking about That's all the testimony was So somehow Turnkey put themselves in this position where the accused lenses all somehow needed strengthening Afforded by the 268 patent But somehow the prior art lenses that are used for the same purpose in the same environment of use Didn't need that, didn't need strengthening And I think that that strains credibility I believe all of the evidence in combination was substantially supported by the obviousness verdict The trial court was right to deny Turnkey's J-Molesta obviousness I have some other comments, Your Honor, on anticipation, which was not raised Anticipation was not raised in the cross appeal, though, was it? You raised it in your red brief, is that the proper way to do it? I believe in this case there was no need, in fact it would have been improper to file a cross appeal on the issue of anticipation As you might remember in Cuito 1 Before the oral argument even started, the question was raised, well, is this cross appeal proper? We remember that quite well I'm sure you do And in that situation, we pointed out that it affected all of the claims, not just the asserted claims And that it was proper in that case Here, though, the claims are identical We're not trying to enlarge our rights The claims that are relevant to anticipation are also relevant to obviousness So I think here, clearly, there was no need to file a cross appeal In fact, it would have been improper, and I would expect that that might have come up at the beginning of the oral argument today Again Again So I think, on anticipation, the issue is that the district court simply misunderstood this court's decision in Cuito 1 Cuito 1 really has to be read in context and not parsed The operative passage in Cuito 1 precluded only prior art lenses that use the same method as that made by Cuito The logic behind that is clear The same method can avoid infringement and, at the same time, anticipate However, what the district court didn't realize is that the 300ZX lens is not an accused lens In our DJ case It's made by a competitor of Cuito and NAL And it uses a completely different process And I think you'll find that in our brief on page 38 Now, Turnkey never once backed away from its infringement drawings or charts Regarding the 300ZX lens They didn't back away at trial We didn't reach it, we didn't touch it today, not yet But they have never backed away from it In fact, Brown, Turnkey's president, stood by the claim charts when he was questioned on them So, the evidence, I think, is undisputed that the 300ZX lens was identical To the prior art version of the same lens At least as to the claims that issued in the 268 patent And that was based on testimony by Dr. Kazimer, as pointed out in our brief I think all of this evidence, in combination with substantial evidence, supporting the anticipation for it I think the anticipation issue is actually quite clear And I believe the court should reverse the trial court's granting of Turnkey's J-mall as to anticipation Unless there are questions, I have nothing further to add Thank you, Mr. Groskin Zelkin will give you two minutes Thank you, Your Honor I just want to briefly stress the point that anticipation and obviousness are separate theories They're separate ways to invalidate a patent One comes out of 102, one comes out of 103 And they're different elements of proof And this court has said, both in Lear-Siegler and in Nestea That, of course, it was in the context of infringement The court stated that the fact that some of Nestea's arguments concerning literal infringement Might also have been relevant to equivalency Is not sufficient in itself to establish that evidence in context for the jury I think likewise here, I want to emphasize the fact that because of separate and distinct analyses That there needs to be separate and distinct evidence There is an obviousness, and it's not merely subsumed in the anticipation presentation And here, there was no additional evidence It was very insightful, Dr. Giudice, the way you commented on the trial strategy And precisely, Coito is trying to have its cake and eat it too They really focused on anticipation They presented several references, described their contents But it never went beyond that They never said how anything could be combined, what might be missing They didn't want to admit that anything might be missing There was absolutely nothing given to the jury for them to actually look through the record To pull out the relevant information to make this determination Okay, thank you, Mr. Zoltan Case can take another five minutes All rise The honorable court is adjourned until 10 o'clock tomorrow morning Thank you